# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

PATRICIA ANN CHRISTIE, )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-544-KEW
)
Commissioner of Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Patricia Ann Christie (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 49 years old at the time of the ALJ's decision. Claimant completed her through the eleventh grade. Claimant has worked in the past as a kitchen helper, home health provider, housekeeper, line worker, and laundry attendant. Claimant alleges an inability to work beginning July 1, 2013 due to limitations resulting from constant pain in her back and knees, neuropathy in her hands and feet, and diabetes.

## Procedural History

On July 18, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 8, 2015, Administrative Law Judge ("ALJ") Deborah Rose conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On December 1, 2015, the ALJ entered an unfavorable decision. The Appeals Council denied review on October 19, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in failing to properly evaluate the medical opinion evidence.

**Evaluation of the Opinion Evidence**

In her decision, the ALJ found Claimant suffered from the

4

severe impairments of history of a right shoulder injury, degenerative disc disease, right knee bursitis and tendinopathy, and diabetes with peripheral neuropathy. (Tr. 17). The ALJ determined Claimant retained the RFC to perform a range of light work. She could lift/carry up to ten pounds frequently and up to 20 pounds occasionally; stand/walk six hours per day and sit six hours daily; only occasionally climb ladders, ropes, or scaffolds, kneel, crouch, and crawl; frequently climb ramps or stairs, balance, or stoop; only occasionally reach overhead with the dominant, right upper extremity; and frequently, but not constantly, handle or finger with her dominant, right upper extremity. (Tr. 20).

After consultation with a vocational expert, the ALJ concluded Claimant could perform her past relevant work as a housekeeper, laundry attendant, line worker, and kitchen helper. (Tr. 25). Alternatively, the ALJ found at step five that Claimant could perform the representative jobs of cashier II, produce sorter, and small product assembler, all of which existed in sufficient numbers both regionally and nationally. (Tr. 27). As a result, the ALJ found Claimant was not under a disability from July 1, 2013 through the date of the decision. (Tr. 19).

Claimant contends the ALJ failed to properly consider the medical opinion evidence. Specifically, Claimant asserts that the ALJ improperly discounted the opinion of Dr. Tony Brown. Dr. Brown

5

completed a medical source statement dated August 6, 2014 which consisted of four documents. In a document entitled "Medical Opinion Re: Absences from Work", Dr. Brown opines that Claimant could miss work about three or more days per month. He attributed this estimation to Claimant's "lumbar back pain w/radiation to the [left] lower extremity which frequently gives way causing pt. to have frequent falls. [Right] shoulder post-traumatic structural abnormality w/limited ROM." (Tr. 379).

The second document is entitled "Medical Opinion Re: Clinical Assessment of Pain." Dr. Brown indicated "[p]ain is present to such an extent as to cause a limitation(s) or restriction(s) having more than a minimal effect on the ability to do basic work activities or activities of daily living on a day-to-day basis." He also checked the box on the form indicating Claimant would experience an "[i]ncrease of pain to such an extent that rest and/or medication is necessary" while engaging in physical work activities. Dr. Brown estimated that Claimant's pain would reduce her ability to perform basic mental work activities by stating "[a] reduction in basic mental work activities to such a degree as to cause inadequate functioning in such task(s) or total abandonment of task(s)." Dr. Brown also indicated Claimant's medication would cause "[s]ome limitations may be present but not to such a degree as to create a serious problem in most instances." He attributed these findings

upon his diagnosed impairments of anatomical derrangement of the right shoulder with limited range of motion and radiculopathy. (Tr. 380).

Dr. Brown's third document was entitled "Medical Opinion Re: Sedentary Work Requirements." He concluded in this document that Claimant could stand/walk up to two hours in an eight hour workday; required the use of a hand held assistive device for even occasional standing and/or walking; could not sit up to six hours in a normal seated position; required elevation of her legs; could not carry ten pounds; could lift five pounds on a repetitive basis; could not use both hands for fine manipulation; could not sustain activity at a pace and with the attention to task as would be required in a competitive workplace; was likely to have significantly difficulty concentrating due to impairments; would require unscheduled breaks during an eight hour workday; could not sustain normal work stress in a routine work setting on a day-to-day basis; could not be expected to attend any employment on a sustained basis; and had non-exertional impairments which would substantially restrict Claimant's ability to function. (Tr. 381).

The final document from Dr. Brown is entitled "Physical Residual Functional Capacity Questionnaire." Dr. Brown states that he had attended Claimant for three years with monthly appointments. He diagnosed Claimant with derrangement of the right shoulder,

intervertebral lumbar disc problems. (Tr. 382). He limited Claimant to less than two hours to sit, stand/walk in an eight hour workday; a need to walk around in an eight hour workday every 30 minutes for ten minutes; a need to shift at will from sitting, standing or walking; a need for unscheduled breaks approximately every 45 minutes for 20 minutes at a time; a need for leg elevation; use of an assistive device to stand/walk occasionally; rarely lift/carry less than ten pounds; never twist, stoop, crouch, climb ladders, or climb stairs; significant limitations in reaching, handling, or fingering due to the right shoulder; no overhead reaching; and an estimation that Claimant would likely be absent from work more than four days per month. (Tr. 383-84).

Dr. Brown also found Claimant was limited by mental conditions, including depression and anxiety. These conditions would frequently interfere with attention and concentration. He determined Claimant was incapable of handling work stress due to pain syndrome from her injuries. He also found Claimant could walk 1/4 block without rest or severe pain. Claimant could sit at one time 20-30 minutes and could stand at one time for 30 minutes. Dr. Brown stated that these limitations applied beginning four years prior. (Tr. 386).

The ALJ acknowledged Dr. Brown's assessment but gave it "little weight" contending the limitations alleged were not consistent with the overall evidence. In particular, the ALJ found that no evidence

8

indicated Claimant had significant unsteadiness in her gait requiring an assistive device. He also found Claimant's pain was well-controlled with medication and the record never indicated she needed a specialist referral, surgery, or physical therapy. Objective testing revealed no more than minor degeneration in the lumbar spine and right knee. She demonstrated reduced range of motion in her right arm but no similar limitation in her left arm that would warrant overhead reaching with her left arm. Her daily activities of dressing, eating, getting out of bed and a chair, and using the restroom without difficulty belied a finding of further limitation. The ALJ also cited to Claimant's activities in vacuuming, washing dishes, and helping care for her grandchildren on weekends to contradict Dr. Brown's assessment. (Tr. 23-24).

Claimant cites to Soc. Sec. R. 96-8p and 96-9p to support a contention that the ALJ must determine the circumstances under which an assistive device is required. While the record indicates pain Claimant's knee, the record is devoid of any reference to a need for an assistive device for Claimant to walk or stand or even a reference to an unsteady or unstable gait. Moreover, the objective testing revealed only minimal degenerative changes in Claimant's lower back and knee. (Tr. 475-78). The ALJ was certainly within her province to find a lack of support for this finding by Dr.

9

Brown.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors

brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Brown's own treatment records do not support the level of limitation he urged in his source statement. Moreover, the level and nature of Claimant's activities of daily living contradict Dr. Brown's opinion and his restrictions are not supported by the other medical evidence of record. As a result, the ALJ did not err in her assessment of Dr. Brown's opinion and rejection of further restrictions in the RFC.

Claimant also challenged the opinion offered by Ms. Michele Shahan-Hale, a physical therapist who rendered treatment to Claimant. On August 13, 2015, Ms. Shahan-Hale completed a source statement which concluded Claimant could perform at less than a

sedentary level with a maximum occasional lift restriction to ten pounds. (Tr. 461). She also limited Claimant to standing and walking for no more than one hour in an eight hour workday. (Tr. 462). Ms. Shahan-Hale found Claimant should never reach, handle, finger, or pull and only occasionally push. She should also never work around heights or moving machinery. (Tr. 467). Based upon two hours of observation, Ms. Shahan-Hale concluded Claimant could not sustain normal exertion to work an eight hour workday or 40 hour workweek. She stated, "[Claimant's] weakness, limited range of motion, balance issues, and limited ability for reaching, stopping (sic), crouching, climbing, kneeling, lifting, and carrying as demonstrated during this evaluation would not be sustainable for job performance and place her at risk for additional injury." (Tr. 468).

Ms. Shahan-Hale is not considered an "acceptable medical source." 20 C.F.R. §§ 404.1502, 404.1513; Soc. Sec. R. 06-03p. Still, information from "other sources" are to be considered to provide insight into the severity of an impairment and how it affects a claimant's ability to function. Soc. Sec. R. 06-03p. The ALJ is required to explain the weight given to these "other sources" such that a court can determine the ALJ's reasoning. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012).

The ALJ gave Ms. Shahan-Hale's opinion "little weight" because

12

the overall evidence, including her own clinical findings, did not support the level of limitation set forth in her assessment.  She noted that Ms. Shahan-Hale's notes showed Claimant was able to heel and toe walk with no difficulty, could push over 100 pounds and could pull 58 pounds.  Ms. Shahan-Hale did not test Claimant's lumbar or right knee range of motion or strength in her left arm or lower extremities.  Claimant reported to Ms. Shahan-Hale that she could dress, eat, get in and out of bed or a chair, and use the restroom without difficulty.  MRI testing revealed only minor degeneration of the lumbar spine and right knee.  (Tr. 25).

Claimant's reported activities appears to belie the physical therapist's conclusion that she could never handle, finger, or crouch.  It was appropriate for the ALJ to rely upon these activities in evaluating Ms. Shahan-Hale's opinion. *See* Castellano v. Sec. of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).  Again, as with the somewhat extreme opinion of limitatoin proffered by Dr. Brown, objective testing revealed only minimal degeneration in Claimant's lower back and knee.  (Tr. 474-78).

Utilizing the same factors as employed in evaluating Dr. Brown's opinion, the ALJ's decision to give Ms. Shahan-Hale's opinion reduced weight was supported by substantial evidence in the record, including Claimant's own testimony as to her activities and the objective testing in the record.

13

Claimant also challenges the ALJ's decision to give the opinion of the medical consultant, Dr. Charles Lee "great weight" since he was not a treating source. The ALJ is permitted to prefer a consultant's opinion over a treating physician's opinion if she explains the weight given and gives good reasons for the weight given to the treating physician's opinion. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ did not entirely discount the opinion of the treating physician but found support in the objective record for the findings of the consultant while finding inconsistencies between that record and the opinion of Dr. Brown and Ms. Shahan-Hale. The ALJ properly substantiated the weight given to all of this opinion evidence.

Claimant also suggests that the ALJ was under an obligation to further develop the record by recontacting sources or employing a consultant. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health

14

& Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do

so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The ALJ did not violate her duty to develop the record by not ordering further medical evaluations.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 26th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE